IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMY FOX | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CHELTENHAM TOWNSHIP AUTHORITY, | : | |
| KEN HELLENDALL, DAVID KRAYNICK, | : | NO.  12-716 |
| & LEONARD RUBIN | : | |

## MEMORANDUM

**Padova, J.**                                                                    **June 18, 2012**

Plaintiff Jeremy Fox brings a claim for violation of his procedural due process rights, and several state law claims, following his discharge as an EMT.  Defendants have moved to dismiss all the claims pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, for summary judgment.  For the reasons that follow, we grant the Motion insofar as it seeks dismissal of Plaintiff's claims.

### I.       BACKGROUND

The Complaint alleges the following facts.  In January 2009, Plaintiff accepted an offer of employment as a paramedic for Cheltenham Township EMS.  To work as a paramedic, Plaintiff needed a Medical Command Authorization ("MCA").  Defendant Dr. Leonard Rubin was Cheltenham Township's Medical Command Physician and was responsible for authorizing Plaintiff's MCA.  Dr. Rubin completed Plaintiff's MCA, which was valid for the year 2009, and Plaintiff began working as a paramedic.  After a leave of absence due to an injury, Plaintiff submitted an MCA form to Dr. Rubin for the calendar year 2010.  When Plaintiff returned to work on January 20, 2010, Dr. Rubin had not yet completed Plaintiff's MCA.  As a result, Plaintiff was subject to probation and "preceptoring" by other paramedics.

On January 29, 2010, Plaintiff responded to a report of a serious injury with fellow paramedics Mike Riley and Michael Smaltini.  Riley was acting as preceptor for Plaintiff on this occasion because Plaintiff still did not have his MCA.  The patient eventually died, and the incident was subject to a quality inquiry by a physician at Albert Einstein Medical Center ("AEMC"), where the patient had been taken.  The Complaint refers to this incident, as the "Versed Incident," presumably because it involved a controversial or improper administration of the drug Versed.

In response to the AEMC inquiry, Dr. Rubin reported that the care provided by the Cheltenham paramedics had been "good."  Dr. Rubin acknowledged that there had been a technical violation of protocol, but stated that the AEMC physician had tacitly approved the EMT's administration of Versed.   Defendant Ken Hellendall, the director of Cheltenham EMS, also initiated an investigation into the Versed Incident.  Hellendall requested that all three paramedics prepare a report about the incident.  Dr. Rubin interviewed Riley and Smaltini but not Plaintiff, and reviewed a report prepared by Plaintiff but not those that Riley and Smaltini prepared.  At some point in February 2010, Cheltenham EMS, by and through Defendants Dr. Rubin and Hellendall, took the position that the Versed Incident was entirely Plaintiff's fault, even though Plaintiff was being preceptored at the time.  According to the Complaint, Defendants took this position in order to insulate the Township EMS, Smaltini, and Riley from any criticism.

Cheltenham EMS, by and through Defendant Hellendall, encouraged Dr. Rubin to deny/withdraw Plaintiff's MCA, which Dr. Rubin did on February 16, 2010.  Dr. Rubin knew or should have known that the denial/withdrawal would result in Plaintiff's termination.  On the form provided to the Department of Health, Dr. Rubin provided no reason for denying Plaintiff's MCA. In addition, Plaintiff was not provided with a copy of this form, despite state regulations that require

a copy to be provided and Plaintiff's request for a copy.

On February 18, 2010, Plaintiff made a verbal request to Cheltenham EMS for an informal name-clearing hearing with Dr. Rubin to understand the reasons for the denial of his MCA, defend his actions, and urge Dr. Rubin to impose a lesser sanction which would allow him to keep working with Cheltenham EMS.  Later that same day, Cheltenham EMS fired Plaintiff because he did not have the required MCA.  It did so despite its knowledge that Plaintiff had a right to appeal Dr. Rubin's decision to deny his MCA and had also requested a name-clearing hearing.  Defendant David Kraynick, the Township Manager, was the ultimate decision maker as to the termination of Plaintiff.  On February 22, 2010, Plaintiff emailed Dr. Rubin and again asked for an informal meeting.  This request, as well as the prior February 18, 2010 request, was denied.

Plaintiff filed an appeal of Dr. Rubin's decision in accordance with the Pennsylvania Emergency Medical Services System Act (the "EMS Act"), 35 Pa. Cons. Stat. Ann. § 8101 et seq. In March 2010, Dr. Rubin met with "certain EMT Medical Command physicians and he learned that the denial/withdrawal that he [had] imposed upon [Plaintiff] was unreasonable and punitive." (Compl. ¶ 41.)  On April 8, 2010, Dr. Rubin revised the sanction to a "restriction" with educational requirements, providing the reason for the restriction as being that Plaintiff's actions "impacted patient outcome."  This form is a public record and part of Plaintiff's permanent record with the Commonwealth.  Plaintiff appealed the restriction as well, and Plaintiff's two appeals were consolidated.  Dr. Rubin opposed Plaintiff's appeals.  At the time Plaintiff filed the Complaint, the appeals were still pending.

With just an MCA "restriction," Plaintiff was permitted to provide services as a paramedic. He requested reinstatement with Cheltenham EMS, but his request was denied.  Eventually, 16

3

months later, Plaintiff obtained part-time employment as a paramedic, without benefits and for less compensation than he had received when he was with Cheltenham EMS.

The Complaint raises four claims against Defendants Dr. Rubin, Township Manager Kraynick, EMS Director Hellendall, and the Township of Cheltenham.  First, Plaintiff brings a claim for violation of his procedural due process rights against all four Defendants, alleging that they defamed him by stating that he was responsible for the Versed Incident, and that due process entitles him to a name-clearing hearing.  Second, Plaintiff brings a breach of contract claim against the Township for firing him without following the EMS Act procedures and for not reinstating him after Dr. Rubin revised the sanction to a restriction.  Third, Plaintiff brings a claim for intentional interference with contractual relations against Dr. Rubin for denying his MCA under false pretenses, knowing that the denial would result in Plaintiff's termination.  Fourth, Plaintiff brings a claim for civil conspiracy against the three individual Defendants, alleging that they conspired to blame him for the Versed Incident and deny him the opportunity to clear his name.  Defendants have moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, for summary judgment on all claims.

## II.    LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny,

4

515 F.3d 224, 233 (3d Cir. 2008) (citing <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d

Cir. 2002)).  Legal conclusions, however, receive no deference, and the court is "not bound to accept

as true a legal conclusion couched as a factual allegation."  <u>Papasan v. Allain</u>, 478 U.S. 265, 286

(1986) (cited with approval in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

        A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed.

R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds

upon which it rests.'"  <u>Twombly</u>, 550 U.S. at 555 (alteration in original) (quoting <u>Conley v. Gibson</u>,

355 U.S. 41, 47 (1957)).  The "complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

(quoting <u>Twombly</u>, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

<u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556).  In the end, we will dismiss a complaint if the factual

allegations in the complaint are not sufficient "to raise a right to relief above the speculative level."

<u>Twombly</u>, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and</u>

<u>Procedure</u> § 1216, at 235-36 (3d ed. 2004)).

## III.   DISCUSSION

        In his due process claim, Plaintiff alleges that Defendants violated his procedural due process

rights insofar as they failed to provide him procedures by which he could safeguard his reputation.

Specifically, he complains that they falsely blamed him for the Versed Incident, fired him, and

refused his requests for a name-clearing hearing.  Defendants argue that we should dismiss Plaintiff's

due process claim because Defendants' actions did not infringe on a protected due process interest

or, alternatively, because the EMS Act afforded Plaintiff with all the process he was due.[1]

A procedural due process claim requires us to inquire 1) whether "'the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property,'" and 2) whether "the procedures available provided the plaintiff with 'due process of law.'" Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (quoting Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984)).  One's reputation alone is not an interest protected by the due process clause.  Paul v. Davis, 424 U.S. 693, 712 (1976).  Accordingly, "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest."  Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (citing Paul, 424 U.S. at 701).  Courts call this the "stigma-plus" test.  Id. (citation omitted).

"In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest."  Id. (quoting Codd v. Velger, 429 U.S. 624, 628 (1977)).  The defamatory statement is the stigma, and the loss of the job is the plus.  Id.  "When such a deprivation occurs, the employee is entitled to a

---

[1]Defendants also argue that we should abstain from exercising jurisdiction over Plaintiff's due process claim under Younger v. Harris, 401 U.S. 37 (1971), because of the on-going state administrative proceedings.  In short, we conclude that the Younger doctrine does not apply here because the state administrative proceedings only allow Plaintiff the opportunity to challenge Dr. Rubin's decision on Plaintiff's MCA, do not provide Plaintiff with an opportunity to present his due process claim, and do not appear to allow Plaintiff to seek monetary damages, and also because the only Defendant who is a party to those proceedings is Dr. Rubin.  See Yang v. Tsui, 416 F.3d 199, 202 (3d Cir. 2005) (listing the three prerequisites to abstaining under the Younger doctrine) (citation omitted); see also Prevost v. Twp. of Hazlet, 159 F. App'x 396, 398 (3d Cir. 2005) (concluding that abstention was inappropriate where the issues, parties, and/or remedies available in the state administrative proceedings were different than those in the federal case).

name-clearing hearing." Id.

"To satisfy the 'stigma' prong of the test, the employee must show: 1) publication of 2) a substantially materially false statement that 3) infringed upon the 'reputation, honor, or integrity' of the employee.'" Brown v. Montgomery Cnty., No. 11-2130, 2012 WL 942645, at *3 (3d Cir. Mar. 21, 2012) (quoting Ersek v. Springfield, 102 F.3d 79, 83-84 (3d Cir. 1996)).  Defendants argue that Plaintiff cannot satisfy this third aspect of the stigma prong, as the allegedly false statements in this case involve only his job performance, and do not impugn his reputation, honor, or integrity.  We agree.

"[N]o liberty interest of constitutional significance is implicated when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." Mercer v. City of Cedar Rapids, 308 F.3d 840, 845 (8th Cir. 2002) (quotation omitted) (cited with approval in Brown, 2012 WL 942645, at *3); see also Wheaton v. Webb-Petett, 931 F.2d 613,  617 (9th Cir. 1991) ("Charges that carry the stigma of moral turpitude may implicate a liberty interest, but charges of incompetence or inability to get along with others do not." (citation omitted)); Adams v. Walker, 492 F.2d 1003, 1008 (7th Cir. 1974) (citations omitted); Kohn v. Sch. Dist. of Harrisburg, 817 F. Supp. 2d 487, 498 (M.D. Pa. 2011) ("[T]he Mayor's statements did not stigmatize Kohn because they only questioned his competency and job performance, which is insufficient to satisfy the stigma part of the stigma-plus test.").  In the case at bar, Plaintiff has alleged that Dr. Rubin falsely stated or implied that he was responsible for a breach of protocol, impacted a patient's outcome, and needed further training.  These statements are allegations of "improper or inadequate performance, incompetence, neglect of duty or malfeasance," and do not involve Plaintiff's honor or integrity.  Mercer, 308 F.3d at 845 (quotation omitted).  Therefore, they cannot as a matter of law

infringe on Plaintiff's constitutional liberty interest in his reputation.

Plaintiff argues that, although the statements at issue involve only his job performance, they nevertheless infringed on his liberty interest because the statements prevented him from obtaining employment for 16 months. He argues that any defamatory statement, regardless of its content, triggers due process protection if the statement forecloses future employment opportunities. In support of this argument, Plaintiff cites solely to Robb v. City of Philadelphia, in which the United States Court of Appeals for the Third Circuit stated that,

> [a]n employment action implicates a fourteenth amendment liberty interest only if it (1) is based on a "charge against [the individual] that might seriously damage his standing and associations in the community . . . , for example, that he has been guilty of honesty or immorality" or (2) "impose[s] on him a stigma o[r] other disability that forecloses his freedom to take advantage of other employment opportunities."

Robb, 733 F.2d at 294 (second, third, and fourth alterations in original) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972)). Plaintiff argues that this passage from Robb identifies two types of statements that satisfy the stigma prong of the stigma-plus test, statements that impugn one's honor or integrity and statements that foreclose future employment opportunities.

We reject Plaintiff's argument for several reasons. First, Plaintiff has misread Robb. The court in Robb was not identifying two ways to satisfy the stigma-plus test; rather, it was setting forth two distinct situations in which an employment action could infringe on one's liberty interest, the first of which involves the stigma-plus test. The second way, and the one on which Plaintiff relies, is separate from the stigma-plus test and does not necessarily involve a false statement of any kind. As the Supreme Court explained in Roth, from which Robb quotes, this second possibility involves a situation, for example, when the state "invoke[s] a[] regulation[] to bar the [plaintiff] from all other public employment in state universities." Roth, 408 U.S. at 573. Thus, the passage from Robb on

8

which Plaintiff relies does not apply to the stigma-plus test and involves situations clearly distinct from the case at bar.

Moreover, Plaintiff's reading of <u>Robb</u> conflicts with the rule from other Courts of Appeals, discussed above, that only statements impugning one's honor or integrity can give rise to due process protection.  <u>See</u> <u>Mercer</u>, 308 F.3d at 845 (citation omitted); <u>Wheaton</u>, 931 F.2d at 617 (citation omitted); <u>Adams</u>, 492 F.2d at 1008.  Notably, the Third Circuit recently applied this rule from the other circuits, albeit in a non-precedential opinion.  <u>See</u> <u>Brown</u>, 2012 WL 942645, at *3.  Finally, Plaintiff has cited to no case adopting his proposed rule.  Therefore, we conclude that the Dr. Rubin's statements were insufficient to trigger due process protection and, accordingly, we dismiss Plaintiff's due process claim on that basis alone.[2]

We also conclude, however, that Plaintiff's claim fails for the additional reason that Plaintiff has not alleged that the state procedures for challenging Dr. Rubin's decision did not comport with due process.  According to Defendants, the EMS Act provided Plaintiff with sufficient procedural protections, and therefore Plaintiff's due process claim fails.  Along with showing that the state deprived him of an interest protected by the due process clause, a plaintiff must "demonstrate [that] . . . state procedures for challenging that deprivation do not comport with due process of law." <u>Taylor Inv., Ltd. v. Upper Darby Twp.</u>, 983 F.2d 1285, 1293 (3d Cir. 1993) (citation omitted).  In fact, Plaintiff has not alleged that the state procedures under the EMS Act, pursuant to which

---

[2]We will not provide Plaintiff with leave to amend because the statements by Dr. Rubin cannot, as a matter of law, infringe on Plaintiff's liberty interest in his reputation.  Therefore, amendment would be futile and is not warranted.  <u>See</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).

Plaintiff appealed Dr. Rubin's decision, were insufficient to provide him with due process of law.[3]

Rather, Plaintiff simply argues that Defendants denied him due process by refusing his requests for

an informal name-clearing hearing.  Such a hearing, however, is only required if the EMS Act's

protections are insufficient.  See, e.g., Graham v. City of Phila., 402 F.3d 139, 144 (3d Cir. 2005)

("[W]e find that Graham's 'prior hearing,' his criminal trial, satisfied the City's due process

obligations and obviated any need for a name-clearing hearing.").  Accordingly, we find that Plaintiff

has failed to state a due process claim upon which relief may be granted not only because he has

failed to allege a protected liberty interest, but also because he failed to allege that the procedures

provided by the state did not afford him with due process.  See Liotta v. Borough of Springdale, 985

F.2d 119, 123 (3d Cir. 1993) (concluding that a plaintiff's due process claim failed because he did

not explain why the hearing that he had did not provide him with due process).

    Plaintiff's three remaining claims are all state law claims: breach of contract, intentional

interference with contractual relations, and civil conspiracy.  Under 28 U.S.C. § 1367(c), a district

court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed

all claims over which it has original jurisdiction."  In making this decision, "the district court should

take into account generally accepted principles of 'judicial economy, convenience, and fairness to

the litigants.'" Growth Horizons, Inc. v. Delaware Cnty., Pa., 983 F.2d 1277, 1284 (3d Cir. 1993)

---

[3]The Complaint does not allege what procedural protections were available to Plaintiff under the EMS Act.  However, under Pennsylvania law, Plaintiff was entitled to a hearing in which he could appeal Dr. Rubin's decision to deny/withdraw the MCA.  28 Pa. Code § 1003.28(d)-(f).  The EMS Act provides that such a hearing will be held "in accordance with 2 Pa. C.S. (relating to administrative law and procedure)" and that the "adjudications may be appealed to the Commonwealth Court."  35 Pa. Cons. Stat. Ann. § 8157. Pennsylvania administrative law requires hearings, notice, an opportunity to be heard, cross-examination of witnesses, and briefs.  2 Pa. Cons. Stat. Ann. §§ 504-06.

(quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966)). "Certainly, if the federal claims are dismissed before trial . . . the state law claims should be dismissed as well." <u>Gibbs</u>, 383 U.S. at 726. As we are dismissing Plaintiff's sole federal claim well before trial and the principles of judicial economy, convenience, and fairness to the litigants do not direct otherwise, we will decline to exercise jurisdiction over Plaintiff's three state law claims and dismiss them without prejudice to Plaintiff's refiling them in a state court forum.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's due process claim is dismissed. In addition, we decline to exercise jurisdiction over the remaining state law claims and, therefore, dismiss those claims as well.[4] An appropriate Order follows.

BY THE COURT:

 /s/ John R. Padova
John R. Padova, J.

---

[4]Because we dismiss Plaintiff's claims, we need not reach Defendants' alternative request that we convert the Motion to Dismiss into a Motion for Summary Judgment. We also need not consider Defendants' other arguments, such as that the individual Defendants are entitled to qualified immunity.

11